Good morning, please be seated. Welcome to the Ninth Circuit. It's a pleasure to be with you this morning, and I am thrilled to be with my colleagues, Judge McEwen and Judge Sanchez. We have two matters that have been submitted on the briefs that are on the calendar today, Urbina v. McHenry and Melendez v. McHenry, and then that leaves us three cases for oral argument. Before we start, I just want to give counsel a reminder that the clock is showing your full time, so if you're arguing for the appellant and hoping to reserve some time for rebuttal, watch your time, and if you give us a signal at the beginning that you want to reserve time for rebuttal, we'll do our best to maybe give you a signal. So with that, we'll start with the first case, which is Garza v. Woods. And I think we're starting with Mr. Paul. Yes, Your Honor. Good morning. May it please the Court. I do hope to reserve two minutes for rebuttal. I appear before you today as the appellant, but in context it feels like a little bit of an oddity because I'm here urging the Court to stand by its prior decisions. And the appellees and the district court below are providing you a number of reasons why you should reverse prior panels of this Court. And so what I'd like to do, other than answer any questions that you have, would be to walk you through line by line what I think are undisputed decisions of this Court and, for that matter, the U.S. Supreme Court that directly resolve the issues in this case. Well, I think it might, given the time constraints, we're familiar with our own cases. Tell me why you think the Arizona statute is sufficiently similar to the California unclaimed property statute so that the Taylor line of cases would apply here. So I think the starting point for that is, one, the fact that the California, at least the Taylor line of cases, involved a transfer of stock wasn't the basis, as the subsequent Taylor cases held. That really wasn't the oddity of the California statutory system. That was the foundation for the principles of law that the Court enunciated. With respect to the trust aspect of it, which is the other distinction that the appellees have made and the district court below made, I actually don't see a difference at all. And so what I think is the answer to that is all of the states. So I'm going to be back up here arguing for Alaska here momentarily. Alaska, Arizona, California, all of them have the custodial trust account. And, of course, the purpose of unclaimed property statute, and we're not arguing against the purpose in any way, shape, or form, is, of course, to allow the public, the State, to use the money that is truly abandoned, fully support that. In fact, it's not being used for that. We'd like that to work better. But that purpose must be preceded by due process. That's our ultimate point. So before we get to due process, if I could just back up a little, and I appreciate your distinctions that you're making here, but it does seem to me that in the Taylor II case, and I'm talking now about just fundamental standing, that was a loss of stock. Yes. And that is an identifiable injury. What is the clear injury here? So what the Supreme Court held in Fuentes v. Shevin is that a violation of procedural due process in and of itself is sufficient to confer standing. It is an injury in fact. And, in fact, the Court went on to say that even if you don't have any injury other than your procedural due process violation, you're entitled to nominal damages because it is recognized as an injury in fact. In some ways the standing and the due process collapsed to a degree here, and you're kind of alluding to that. So then you jump to the U.S. Supreme Court case of Anderson, which is basically saying that the substitution of the state for the bank isn't a deprivation of property. That seems to me to be precisely the situation that we're in here. Maybe I'm missing something, so I'd appreciate your comments. Yeah, so I think the answer to that is Anderson dealt with the constitutionality of the unclaimed property statutory system as a whole, the state's right to do that in the first place. And, again, we don't question that. So to the extent that the Anderson analysis is the state actually does have the right to take property that is presumed abandoned and ultimately may be actually abandoned, the state has the right to do that and put it to public use. That's what we want. That's what we're arguing for. But what Anderson made clear was that that has to be preceded by due process, that that whole system hinges on, as a foundational principle, due process. And so you can't then subsequently take out the due process, the prior due process that existed in the Kentucky statute at issue in Anderson and say, well, the state still has the right to do it. No, the Supreme Court said it's following due process. The state has the right to do this, and we don't dispute that. And that's where the summary substitution issue is, because — I'm probably still left a little bit swimming on your definition of what is the due process violation. The lack of prior notice. I have a question related to, I think, the things that Judge McEwen is trying to get at, and that is I'm not — if we were to question whether the movement of the money or the property of any form from the holder to the state is a deprivation, are we boxed in by the Taylor cases on that issue? And the reason I ask that is because it seems like Taylor II does the due process analysis and goes through and analyzes is there a due process violation. You can't do that unless there is a deprivation. Otherwise, due process doesn't apply. But I don't read Taylor as actually analyzing whether a deprivation has occurred or not. So where does that leave us in terms of our precedent? Could we look at the Taylor cases and say that question, maybe they assumed that and then they went on to do the due process violation? Or is there a holding from this Court on this is or isn't a deprivation? So I think that that starts with two principles. One is, yes, I actually do believe the Taylor cases found that a transfer of property for purposes of an unclaimed property statute is a deprivation that invokes due process. So the entire due process analysis of Taylor was the fact that there is a transfer of property from a holder to the state, and that's what was the basis for pre-deprivation notice. So that brings us back to the issue of was that contingent because they were selling the property. And I think to your initial question, Judge, that was this notion and the distinction that's trying to be drawn here with respect to this custodial trust. But all three states have the custodial trust account. They fund it with $100,000 of the $1.8 billion that Arizona is holding, which is our proof in the pudding that this system isn't working. They have no intent to give this money back. They have no desire to give this money back, and they're trying to give the least amount of notice possible because they're only going to fund $100,000. We're talking about deprivation. Is it possible to have a deprivation without a concrete injury in fact for purposes of standing, or do they collapse into being one and the same? I think they collapse one and the same, which is why my due process argument is the same as my standing argument. That is, the lack of pre-deprivation notice is the injury in fact and is the act that invokes due process. So then in your view, to answer Judge Forrest's question, you do think Taylor 2 boxes in or binds us because it did actually address the issue of a concrete injury in fact from the achievement of the stocks, even before they were sold? That's correct. And in fact, if we play the Taylor cases out, they went back down for an injunction, and the State there argued, well, this should just be limited to the sale of property and not transfers of checks and things like that. And the district court said, no, no, no, that's not the basis of the Ninth Circuit's holding. It is everything. And that's what was affirmed when it went back up is, yes, this is a broad injunction. It is not limited to the sale of stock or the sale of other property. It is the act of transferring property to the State. Without notice. Without notice, correct. Do you want to reserve some time? I do.  Good morning, Your Honors. May it please the Court, Hannah Porter on behalf of the Defendant Appelese. I'm going to start off, I think, addressing a question that we've already been talking about, because I do believe that the standing and the due process arguments here are closely intertwined because of the requirement for a concrete, particularized, non-hypothetical injury and a deprivation of property. And it's our position that plaintiffs have it backwards on both fronts. There's been no deprivation of a property, and the act actually preserves property that would otherwise be lost. I want to give a brief example. If we think of a patient who overpays at a doctor's office and a refund check is sent to them, but for whatever reason the patient doesn't cash that refund check, maybe threw away the envelope or moved without forwarding his address, three years go by. We know for certainty by that time that that refund check is just never going to get cash. Without the Unclaimed Property Act, what would happen is what's known as private as cheap. The provider would just keep that money forever without any further notice, and the patient would lose the money. That's real harm. That's a real deprivation of the property. But with the Unclaimed Property Act, the provider is required by statute to provide notice in a form that's been constitutionally blessed by this court, first-class mail to the last known address. And then if no response is received, the property is transferred to the state for safekeeping, meaning that the plaintiff then has 35 years under Arizona's act to claim it and gets to use a centralized, constantly updated website to find and make a claim on the property. Ms. Porter, let me give you a different example that I was thinking about this morning. Suppose I have a money market account in a bank that I'm using for liquidity, and I'm not touching it. There's no activity on it. And the state deprives me of it without notice. Is it your argument that I have not suffered a concrete injury, in fact, until I make a claim for that money? Well, I want to make a couple of differences. So the presumption of abandonment differs for what types of different properties we're talking about. A money management account, if you're talking about stocks, it only gets triggered if there's dividends that haven't been cashed or paid. But just for purposes of standing, I just want to drill down on your injury argument. Have I been injured before filing a claim for that property, before I realize that the property is not in my account any longer? The injury, there's no injury on the transfer of the property from one custodian to the state, and that's what the Supreme Court held in Anderson 80 years ago. But that's, I think Anderson is different in the sense that that's with its own attendant notice provisions, and I think that's the difference that's happening here, at least as plaintiffs have alleged it. Well, and to be clear, I think in your question you presumed that no notice is required. Right. But under Arizona's Act, there is notice that's sent out by the holders. So it's like we're talking past each other, because they're saying we don't get to even all this analysis because there was no notice, and that's the procedural violation alleged. Right. There, as far as I know. Because they say they're not challenging the statute per se. And, Your Honor, I think you've hit the head on the nail of why it's so difficult here to talk about what is the injury here. As far as I understand, their position is that the notice that's sent out by the holders isn't constitutionally sufficient because it's in an envelope that's sent by the holders rather than put in the mail by a government employee. Yeah, but didn't Taylor talk about the notice needs to come from the government? I mean, we can argue about whether that's a good conclusion, but it seems like Taylor says that. And, Your Honor, I think Taylor is distinguishable on many fronts. Not only in terms of the facts, as we were talking about, under the California Act at the time, the transfer to the state was concurrent with the sale of the property. And so they found that there was a concrete injury based upon the sale of the stock there. And the claim was that they had not provided notice and that their property wasn't even subject to the California Act. It wasn't lost. They said they were outside the jurisdiction. Can I follow up with this point? Because I actually do think Taylor, too, did address a sheet meant separately from the sale of the stocks. And I'll read you from the part that I think matters. It says, rather, the injuries suffered by plaintiffs include not only those attendant to having their property sheeted without notice, but also include the cost of monitoring, injury from the sale of the stock that preceded stock splits and other things. That including, at least suggests to me, that it was all of the above, where just the transfer itself was enough to cause a concrete injury, in fact, for purposes of standing, which is, I think, what we have here. Well, and I think part of it, though, what I was trying to get to, is they were saying that the transfer itself was a mistaken transfer and should never have happened. And so that was an injury because it was subject, then, to the statute that it should have never been subject to. And plaintiffs are saying here the transfer should have never happened because it was not attendant to constitutionally adequate notice. Well, I think with respect, I think what they're saying is we're fine with the way the statute is set up in terms of it's presumed abandoned after three years of not touching it. And they don't dispute that this property was subject to that presumption of abandonment. There's no dispute about that, that it falls under the Act. They're just saying, well, the notice should have come directly from a government employee. And to get back to Judge Forrest's point, I think, which was about Taylor and talking about who sent it, I agree that Taylor makes an offhand reference to something, and they say, well, that's apparently foreclosed by Jones. But when we look at the Jones case in the Supreme Court, that wasn't an issue to be decided by the court, whether it was the state sending it versus someone else. At issue in Jones was whether or not the state had to do something more than sending notice via certified mail before they took a house. Even if that's true, it seems like the language in Taylor is now saying, for due process purposes, and when we do that analysis, we want notice to be coming from the state itself and not from a third party designated by the state, which is what the system is under Arizona statute as I see it. Arizona statute says that the holder is going to give notice. Well, and to parse Taylor even more particularly, they say California has not cited any case law for a position that they can rely on the likelihood of notice coming from a holder. And so I don't know the particulars of the California statute, but here we have a statute that requires the holders to send notice, and when they transfer it to the state, they are required to submit a verification with that transfer form that says, among other things, that they have provided the notice that's required under the statute. So your argument is really that the state then stands in the shoes of the bank? Yes. Under the Arizona law. I was going to say it sounds like this may be something that should get beyond a motion to dismiss stage so that both sides can present their views of whether the notice is reasonably calculated under the circumstances to reach the intended recipients either way. As a legal matter, it shouldn't be foreclosed by Taylor or, on the other hand, blessed. It's our position that because there isn't a loss of any property rights on the substitution of one custodian for another, that, no, you don't need to get into the facts. You can decide that under the circumstances of what we have here, property that's been presumed abandoned, that they haven't touched for years, that the notice is in a form that's reasonably calculated. To be clear, because Paylenas here haven't challenged the form itself, what it looks like, the use of first-class mail, the only challenge is who put it in the envelope, and I think they've ignored all of the case law. We've cited the example of process servers. That notice can come from private entities and not directly from the state. Can I ask, is it your view that the statutory scheme creates a custodial relationship with the property? Because I read the district court to draw the conclusion that it differed enough from California that it was actually the state's own taking interest in the money and using it for its own ends. I think, and we would agree with the district court, that there's language that was in the California Act with respect to taking title and other custodial trust language that's missing from the Arizona Act. And so while Arizona is holding the property in safekeeping, it's missing that critical language that was used in Taylor 1 to find that there wasn't. So what does that mean? Is Arizona holding the property for safekeeping in a trust relationship, or is it the state's money now in your view? In our view, it's the state's money when it goes into the state's general fund. Then how is it that a person can file a claim for up to 35 years to get that back? How can it be the state's money, but at the same time the state has an obligation to pay out claims for up to 35 years? It's our position that that's the way the statute is set up. As we've said, if you make a claim within 35 years, you will get it back. But what is barred under the 11th Amendment is retrospective relief that would require a payment from the state's general fund, and that's what would happen here. Would it matter what kind of property it is? In other words, we were talking before about Taylor and the stock as opposed to money, pure money. Does it matter if it's a bond, stock holdings, or money? That's an interesting question that I want to make sure that I'm thinking through. I think our point is once it's in the general fund, which would be money after a sale of stock, then that's what's barred by the 11th Amendment. The state does hold on to things like stock for an additional period of time before they sell it after the transfer to the state. And then it's just money as money is fungible? Is that the response?  Can I ask you about the reverse condemnation claim? It seemed to me from reading the 7-Up case that that claim could not be presented in federal court. The argument that our holding in the 7-Up case was that inverse condemnation claims against state officials have to be filed in state court and not federal court. What is your view of that case? That is not one that I think we briefed in this. That's the Montana mineral rights case. It came out a few years after the Taylor One case. It's our position on the takings issue that they do have a state claim procedure. And if they made a claim, a valid claim to this property, they would get a return of it. And so that's the proper procedure for them to go through. So it's not a takings because they could get it back? Yes. Thank you. Thank you very much for your argument. Thank you.  I have three responses to what I just heard. I think the first one is if they're going to say it's their property now, then I don't know what the debate is about a deprivation. They just took it and they're claiming it's theirs. That's a deprivation. And, in fact, the district court had this odd holding that I didn't think they were supporting until just now that title did actually transfer to the state. Of course, if title or property transfer, that's a deprivation for due process purposes. Second, to the standing point, and maybe related across the due process point, if we're going to say that the injury, in fact, is monetary harm, which I think Fuentes rejects, but let's put that aside for the moment. If we're going to say that the Taylor cases were unique because the sale of stock involved a situation, in that case, where, admittedly, the stock skyrocketed in value after the state sold it, and so the person had lost a lot of money. But if we're going to say that what happens to Amazon stock or Intel stock or whatever after the state sells it is the determining factor for standing, that means that if the stock goes down, the person loses their standing during the course of the litigation because they didn't lose money anymore. I don't think that makes any sense. We're not going to put the standing principles on the vagaries of the stock market going up and down. It's the transfer itself and not the monetary loss that confers standing and invokes procedural due process. The second point is the distinction that I think you've raised, Judge Sanchez, with respect to the custodial trust language. Let me present the scenario here because I think it works exactly the same in Arizona as it does in California. They, by statute, Arizona, by statute, puts $100,000 in their custodial trust account. My contention is they're still holding all of that money in a custodial relationship, but they have a custodial trust account. The whole point is so that they can use it and put that money to public good. Great. That's why it goes into the general fund. I'm going to interrupt you because we are out of time on the Garza case, and we're just going to do a half-set change, and you're still going to be talking to us in the next case. Okay, fair enough. For now, the Garza case argument is over, and that case is submitted.
judges: McKEOWN, FORREST, SANCHEZ